In re ADVANCED CELLULAR
SYSTEMS, Debtor.

In re Advanced Paging Systems,
Corp., Debtor.

Advanced Cellular Systems,
Inc., Plaintiff,

v.

Jaime Mayol, Liquidation Receiver of
El Fenix de Puerto Rico; Receiver-
ship El Fenix de Puerto Rico.

Bankruptcy Nos. 97–07437, 98–07438.
Adversary No. 98–0078.

United States Bankruptcy Court,
D. Puerto Rico.

July 6, 1999.

 

Carmen D. Conde Torres & Monsita Lecároz Arribas C. Conde & Assoc., Hato Rey, PR, for plaintiff.

Juan A. Moldes Rodríguez, Hato Rey, PR, for defendants.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE,
Bankruptcy Judge.

Before the Court is the Motion to Dismiss and Brief in Support filed by Juan Antonio García, Insurance Commissioner of Puerto Rico ("Commissioner") and appointed liquidator of El Fénix de Puerto Rico, Compañía de Seguros ("El Fénix"). The Commissioner argues that this Court does not have jurisdiction to entertain this adversary proceeding because on September 16, 1997, Puerto Rico's Court of First Instance issued an order declaring El Fénix an insolvent insurer and appointing the Commissioner as liquidator. According to Section 4021 of the Insurance Code of Puerto Rico, P.R.Laws Ann. tit. 26, § 4021, when an insurance company is declared insolvent and placed into state delinquency proceedings by the state insurance commissioner, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere." Hence, the Court of First Instance is vested with exclusive original jurisdiction over all delinquency proceedings. Based on this provision, the Commissioner contends that this Court does not have jurisdiction to entertain this matter. The Commissioner argues that Debtor/Plaintiff Advanced Cellular Systems, Inc. ("Advanced Cellular") must present its claim against El Fénix within the liquidation proceeding. Moreover, the Commissioner holds that the Bankruptcy Code does not apply to the instant case because it was reverse preempted by the Insurance Code of Puerto Rico under the McCarran–Ferguson Act.

Advanced Cellular filed an Opposition to El Fénix's Motion to Dismiss claiming that "the Complaint is merely a claim to recov-

er a certificate of deposit property of the Debtor from the person (institution) who represents El Fénix, as actual holder of said certificate" under Sections 542 and 543 of the Bankruptcy Code. Thus, the Complaint is not a monetary claim against an insurance company covered under state insurance law and protected by the McCarran–Ferguson Act. Consequently, the Bankruptcy Court has jurisdiction over this adversary proceeding.

The controversy between the parties hinges on determining whether this Court has jurisdiction to entertain this matter and order the turnover of property under Sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. §§ 542 & 543, or if such determination should be made within the liquidation process of the insurance company pursuant to the Insurance Code of Puerto Rico in an administrative proceeding.

## I. Facts and Procedural History

On May 21, 1996, the Commissioner issued a financial bond in the amount of $450,000.00 in favor of the Puerto Rico Telephone Company ("PRTC") at Advanced Cellular's request. As collateral for the financial bond, Advanced Cellular tendered El Fénix a certificate of deposit in the amount of $178,738.38. The bond expired on May 21, 1997. From May 21, 1996 to May 21, 1997, PRTC did not make a claim upon the referred bond.

On September 16, 1997, Puerto Rico's Court of First Instance issued an order in the case of *Garcia v. El Fénix, supra,* declaring El Fénix an insolvent insurer and appointing the Insurance Commissioner as liquidator. As liquidator, the Commissioner was authorized to take immediate possession of all the assets of the insolvent insurer and to collect all of its credits. Likewise, the Court ordered that all pending claims against El Fénix be dismissed and remanded to the liquidation proceeding. On April 3rd, 1998, PRTC filed a claim before the Commissioner for

$2,232,593.27 under the bond issued by El Fénix.

On August 5th, 1998, Advanced Cellular filed a complaint against the Commissioner as liquidation receiver of El Fénix requesting the turnover of the certificate of deposit pursuant to sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. §§ 542 & 543. On August 6, 1998, the Commissioner was served with the summons and copy of the complaint. On September 10, 1998, Advanced Cellular filed a Motion for Entry of Default because the Commissioner failed to file a responsive answer within thirty (30) days after issuance of the summons as required by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

On September 11, 1998, the Commissioner filed a Motion to Dismiss arguing that the Bankruptcy Court does not have jurisdiction to entertain this adversary proceeding. The Commissioner contends that when an insurance company is under liquidation, it cannot be made a party in an adversary proceeding before the Bankruptcy Court because it would violate the McCarran–Ferguson Act. Moreover, El Fénix argues that the complaint disrupts the orderly and centralized liquidation of the insurance company.

On October 2, 1998, Advanced Cellular filed an Opposition to the Commissioner's Motion to Dismiss and a Request for Order Entering Default. Advanced Cellular argues that the Commissioner's motion is untimely and should be denied. Moreover, Advanced Cellular claims that the McCarran–Ferguson Act does not apply to the case at bar because the complaint "is merely a claim to recover a certificate of deposit property of the Debtor from the person (institution) who represents El Fénix, as actual holder of said certificate," and "is not an attempt to 'regulate the business of insurance' nor does it deal with matters 'regulated by the insurance business.'" Advanced Cellular also holds that this Court has jurisdiction because the complaint is a core proceeding. Advanced Cellular explains that the certificate of de-

posit is property of the bankruptcy estate because "it has been widely and repeatedly held that a cash deposit provided as collateral is and remains property of the bankruptcy estate." Finally, Advanced Cellular asserts that the recovery of said certificate is of crucial importance to the Plaintiff's bankruptcy estate.

On October 29, 1998, the Commissioner filed its Reply to Advanced Cellular's Opposition to the Motion to Dismiss. The Commissioner contends that the instant case meets the criteria set forth in *U.S. Department of the Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), for the application of the McCarran–Ferguson Act. First, the Insurance Code of Puerto Rico is a law enacted by the State for the purpose of regulating the business of insurance and thus, protected by the McCarran–Ferguson Act. Secondly, Advanced Cellular is proposing this Court to construe an act of Congress, namely the Bankruptcy Code, to invalidate, impair or supersede the state law. Third, the Bankruptcy Code was not promulgated as an act to regulate the business of insurance. Since all the factors for the application of the preemption clause of the McCarran–Ferguson Act were met, the Commissioner claims that the complaint must be dismissed.

On November 9th, 1998, Advanced Cellular filed a Surreply to the Commissioner's Reply to the Opposition to Motion to Dismiss. Advanced Cellular contends that the complaint constitutes an *in rem* action to recover property of the estate under sections 542 and 543 of the Bankruptcy Code. Thus, granting the Commissioner's Motion to Dismiss will constitute an illegal taking of Debtor's property. Advanced Cellular also argues that PRTC does not have a legitimate claim against the bond because it filed the claim almost a year after it had expired. Moreover, Advanced Cellular reiterates that the McCarran–Ferguson Act does not apply to the instant case because "the complaint has nothing to do with the insurance business."

On February 17, 1999, the Court held a pretrial conference and granted both parties fifteen (15) days to supplement their briefs. Accordingly, on March 25, 1999, Advanced Cellular filed a Motion to Supplement the Opposition to the Motion to Dismiss. Advanced Cellular argues that the case at bar does not meet the criteria set forth in *U.S. Department of the Treasury v. Fabe, supra,* for the application of the McCarran–Ferguson Act. First, the liquidation process of El Fénix will not be impaired by the turnover of Plaintiff's property to the bankruptcy estate. Second, the Insurance Code of Puerto Rico is a provision that does not directly or indirectly regulate policyholders and is not necessary for the protection of policyholders.

Finally, on March 31, 1999, the Commissioner filed a Motion to Supplement its Motion to Dismiss. The Commissioner claims that according to the terms of the agreement between it and Advanced Cellular, El Fénix was to retain whatever property or value was given as a collateral security. Moreover, El Fénix was not to be discharged from liability under the bond until proper evidence of the discharge from liability was furnished to El Fénix. The Commissioner also claims that since PRTC is the beneficiary of the bond issued by El Fénix and a claim was made against said bond before the expiration date of the same, the certificate of deposit claimed in the complaint, which serve as collateral to the bond, must be regarded as part of El Fénix estate. The Commissioner reiterated that since all three criteria for the application of the preemption clause of the McCarran–Ferguson Act were met in this case, the complaint should be dismissed.

## II. Analysis

### Introduction

It has been noted that bankruptcy proceedings and insurance company insolvency proceedings are "fundamentally similar in that they are designed to liqui-

date rather than reorganize. The object of such a proceeding is to marshall the debtor's assets into the estate for distribution to creditors pursuant to the prioritization formula set forth in the respective statute."[1] Bankruptcy proceedings are governed by the federal Bankruptcy Code and Rules, which expressly exempt insurance companies from their purview. 11 U.S.C. § 109. Insurance company insolvency proceedings, by contrast, are governed exclusively by state law,[2] both historically and pursuant to federal statutes.[3] There is, however, one recurring situation in which an insurance company insolvency proceeding and a bankruptcy proceeding may collide. This occurs when a debtor claims to have a right over a property held by the liquidator of an insurance company. When this occurs, the court must determine whether the Bankruptcy Code is reverse pre-empted by the state insurance legislation under the McCarran–Ferguson Act.

### The McCarran–Ferguson Act

■ The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, provides states with preemptive authority over the regulation of "the business of insurance." The McCarran–Ferguson Act " 'overturn[ed] the normal legal rules of preemption' by imposing a rule 'that state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless the federal statute specifically provides otherwise.' " *American Deposit Corp. v. Schacht*, 84 F.3d 834, 837–38 (7th Cir.1996), *cert. denied*, 519 U.S. 870, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996) (quoting *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)). In other words, the McCarran–Ferguson Act reverses the normal supremacy of federal law over

state law, so long as the activity in question falls under the heading of "the business of insurance."

The McCarran–Ferguson Act was enacted by Congress in 1945 as a response to the Supreme Court's decision in *United States v. South–Eastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), which applied federal antitrust laws to insurance companies engaged in interstate commerce. *See, Stephens v. National Distillers & Chem. Corp.*, 69 F.3d 1226, 1230 (2nd Cir.1995). Prior to *South–Eastern Underwriters*, it had been widely assumed that the issuance of an insurance policy was not a transaction of commerce subject to federal regulation. *See, Fabe*, 508 U.S. at 499, 113 S.Ct. 2202. The decision in *South–Eastern Underwriters* "provoked widespread concern that the States would no longer be able to engage in taxation or effective regulation of the insurance industry." *St. Paul Fire & Marine Insurance Co. v. Barry*, 438 U.S. 531, 539, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). Their concern was that because the business of insurance was now considered interstate commerce, ordinary supremacy rules would curtail a state's ability to regulate insurance companies as they had in the past. *Fabe*, 508 U.S. at 499–500, 113 S.Ct. 2202.

■ Congress responded to those fears by restoring the supremacy of the states in the regulation of insurance by enacting the McCarran–Ferguson Act. *Id.* at 500, 113 S.Ct. 2202. In Section 2(a) of the Act, Congress mandated that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). Moreover, in the first

---

1. Davis J. Howard, *Bankruptcy Proceedings and Insurance Company Insolvency Proceedings: Things That Go Bump in the Night*, 17 Ohio N.U.L.Rev. 255 (1990).

2. *See*, Davis J. Howard, *Standing to Sue a Carrier's Killers*, 17 Pepperdine L.Rev. 311, 312–13 (1990).

3. 15 U.S.C. §§ 1011–1015 (1982), popularly known as the McCarran–Ferguson Act.

clause of Section 2(b), Congress provided that:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(b). Those two provisions reverse the ordinary rules of preemption which holds that federal law preempts state law by virtue of the Supremacy Clause. Specifically, they defer insurance regulation to the states by " 'removing obstructions which might be thought to flow from [Congress'] own power, whether dormant or exercised, except as otherwise expressly provided in the Act itself or in future legislation.' " *Fabe,* 508 U.S. at 500, 113 S.Ct. 2202 (quoting *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 429–30, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946)).

█ A federal statute is reverse-preempted under the McCarran–Ferguson Act if (1) it does not "specifically relate[ ] to the business of insurance"; (2) the state statute was enacted "for the purpose of regulating the business of insurance"; and (3) the federal statute would "invalidate, impair or supersede" the state statute. *Fabe,* 508 U.S. at 501, 113 S.Ct. 2202.

In this case, there is no question that the Bankruptcy Code does not specifically relate to the business of insurance. In fact, in *Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), the Supreme Court explained that "[m]any federal statutes with potentially pre-emptive effect, such as the *bankruptcy statutes, use general language that does not appear to 'specifically relate' to insurance;* and where those statutes conflict with state law that was enacted 'for the purpose of regulating the business of insurance,' the McCarran–Ferguson Act's anti-pre-emption rule will apply." [4] *Id.,* at 42, 116 S.Ct. 1103 (emphasis

ours). Thus, this Court has to address the other two requirements mentioned above.

First, the Court must determine whether the statute at issue is one "enacted ... for the purpose of regulating the business of insurance." Since there is no statutory definition of "insurance" provided under the McCarran–Ferguson Act, the task of defining "insurance" for purposes of this statute has fallen to the federal courts.

The Supreme Court has twice had occasion to decide whether a state law was enacted "for the purpose of regulating the business of insurance" under the McCarran–Ferguson Act. In *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), the Supreme Court concluded that a law "enacted ... for the purpose of regulating the business of insurance" is one "aimed at protecting or regulating [the] relationship [between insurer and insured], directly or indirectly...." 393 U.S. at 460, 89 S.Ct. 564. The Court elaborated:

> Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which Paul v. Virginia held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they to [sic] must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder.

*Id.*

The Supreme Court revisited this statutory interpretation issue in *United States v. Fabe,* 508 U.S. 491, 113 S.Ct. 2202, 124

---

4. *See* also, *Fabe,* 508 U.S. at 501, 113 S.Ct. 2202 (noting the parties' agreement that federal bankruptcy priority rules, although con-

flicting with state law, do not "specifically relate" to the business of insurance.)

L.Ed.2d 449 (1993). The Court stated that "[t]he broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." 508 U.S. at 505, 113 S.Ct. 2202. In that case, the Court considered whether an Ohio statute which established a priority of creditors' claims in a proceeding to liquidate an insolvent insurance company was a law enacted "for the purpose of regulating the business of insurance" within the meaning of section 2(b) of the McCarran–Ferguson Act. The Court held that an insurance liquidation priority statute regulates the "business of insurance," within the meaning of the McCarran–Ferguson Act, to the extent that the statutory provisions are found to protect policyholders interests. *Id.*, at 508, 113 S.Ct. 2202. But to "the extent that it is designed to further the interests of other creditors, ... it is not a law enacted for the purpose of regulating the business of insurance." *Id.*, at 508, 113 S.Ct. 2202. In particular, the Court found that the state may afford priority to the costs and expenses of administering the liquidation over the claims of the United States. *Id.*, at 492, 113 S.Ct. 2202. It said that this provision "is reasonably necessary to further the goal of protecting policyholders" because, without such a provision, "liquidation could not even commence." *Id.* In contrast, the Court found that the "preferences conferred upon employees [for wage claims] and other general creditors" were not insurance-regulating provisions. *Id.* The Court said that such preferences "do not escape pre-emption because their connection to the ultimate aim of insurance is too tenuous." *Id.*, at 508, 113 S.Ct. 2202. The Court stated that the general assertion that every preference accorded to the creditors of an insolvent insurer ultimately may be resolved to the benefit of policyholders by enhancing the reliability of the insurance company was too broad based to avoid preemption under the McCarran–Ferguson Act.

In *Garcia v. Island Program Designer, Inc.*, 4 F.3d 57, 61–62 (1st Cir.1993), the First Circuit Court of Appeals interpreted *Fabe* as saying that a statute must be parsed in determining the extent of its preemptive power under the McCarran–Ferguson Act. In contrast, in *Stephens v. American International Insurance Co.*, 66 F.3d 41, 45 (2nd Cir.1995), the Second Circuit took a different approach and held that a statutory scheme may be considered in its entirety. In *Munich American Reinsurance Company, et al. v. Crawford*, 141 F.3d 585, 592 (5th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998), the Court of Appeals for the Fifth Circuit noted the different approaches taken by the First and Second Circuit Courts of Appeals in their application of *Fabe* and explained that "*Fabe's* holding in this respect is simply unclear." "*Fabe's* holding and analysis suggest that a statute may require parsing to determine the extent of its pre-emptive power under the McCarran–Ferguson Act. At the same time, however, the Court stopped short of directing that this approach be taken in every case." *Id.*, at 592.

■ This Court follows *Garcia's* rationale in reaching its holding. We will analyze the provision of Puerto Rico's Insurance Code which states that when an insurance company is declared insolvent and placed into state delinquency proceedings, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere." P.R.Laws Ann. tit. 26, § 4021. Both parties agree that this provision is the root of this contested matter. The Commissioner argues that Section 40.210 of the Insurance Code serves the purpose of regulating the business of insurance and, therefore, falls within the scope of the McCarran–Ferguson Act. On the other hand, Advanced Cellular argues that the provision in question "does not directly, nor indirectly regulate policyholders, specifically when applied to the case at bar...."

The Insurance Code of Puerto Rico is "an intricate scheme and highly specialized administrative system, adopted by the Commonwealth of Puerto Rico to regulate the life of insurance companies from incorporation to dissolution ... [It] provides a comprehensive program for the rehabilitation and liquidation of domestic insurance companies...." *Mercado–Boneta v. Administración*, 125 F.3d 9, 13–14 (1st Cir. 1997) quoting *García v. Island Program Designer*, 791 F.Supp. 338, 341 (D.P.R. 1992), *rev'd on other grounds*, 4 F.3d 57 (1st Cir.1993). To ensure an orderly and equitable distribution of insurer's assets, Section 40.210 provides in relevant part:

(1) Upon issuance of an order appointing a liquidator of a domestic insurer or of an alien insurer domiciled in Puerto Rico, no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere, nor shall an action of that nature be maintained or entered after issuance of such order....

P.R.Laws Ann. tit. 26, § 4021. This section provides the liquidator with exclusive original jurisdiction over all delinquency proceedings. It requires that all actions at law or equity filed against the insurer be dismissed.

In *Munich American Reinsurance Company, et al. v. Crawford, supra*, the Fifth Circuit Court of Appeals considered a similar provision of the Oklahoma Uniform Insurers Liquidation Act, 36 Okla.St. Ann. §§ 1901 et seq., which vested "original jurisdiction of delinquency proceedings in the Oklahoma state court and authorizing the court to enjoin any action interfering with the delinquency proceedings...." 141 F.3d at 592–93. The Court concluded the following:

[T]he specific provisions of the statute at issue here ... are laws enacted clearly for the purpose of regulating the business of insurance. *These provisions give the state court the power to decide all issues relating to disposition of an insolvent insurance company's assets,* including whether any given property is part of the insolvent estate in the first place.

*Id.* (Emphasis ours). The Court explained that "giving the state court ultimate control over all issues relating to the insolvent insurance company is 'aimed at protecting the relationship between the insurance company and its policyholders.'" *Id.*, at 593. The Court explained

In addition to the interests served by orderly adjudication of claims, which we have already discussed, consolidation prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country. Consolidation also eliminates the risk of conflicting rulings, piecemeal litigation of claims, and unequal treatment of claimants, all of which are of particular interest to insurance companies and policyholders, who are often relying on policies with the same or similar provisions.

*Id.* Finally, the Court reminded that *Fabe* decided the Ohio law dealing with insolvency preferences for administrative expenses was "reasonably necessary" to the goal of protecting policyholders, hence, that law was enacted for the purpose of regulating the business of insurance. *Id.*, at 593 (quoting *Fabe*, 508 U.S. at 509, 113 S.Ct. 2202). The court applied the same reasoning to the Oklahoma liquidation proceedings in state court, holding that although some of the benefits from the liquidation could devolve upon non-policy holding creditors, none of those which inure to the benefit of policyholders "are insignificant or attenuated," and are "indistinguishable from the Ohio provision giving a preference to administrative expenses in *Fabe*." *Id.* at 594. Thus, consolidation enforced through injunctions, conserves the insurance company's assets for ultimate payment to policyholders as well as other creditors. *Id.*, at 593 (citation omitted). Thus, the court concluded, "these provi-

sions were enacted for the purpose of regulating the business of insurance." *Id.* at 594.[5]

Similarly, in *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277, 1281 (10th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1112, 143 L.Ed.2d 108 (1999), the Tenth Circuit Court of Appeals considered whether Utah's statutory provision consolidating all claims against a liquidating insurer was enacted to protect policyholders. Adopting the Court's reasoning in *Munich, supra,* the Court held that said provision, "was enacted to protect policyholders. By offering benefits to other creditors, that ultimate purpose is neither diminished nor denigrated." *Id.,* at 1281. The Court also considered a section of the Utah statute which provided that "[t]he filing of a petition for liquidation of a domestic insurer or of an alien insurer domiciled in this state stays all actions and all proceedings against the insurer in Utah or elsewhere...." *Id.,* at 1281, n. 4 (quoting Utah Code Ann. § 31A–27–317(a)). The Court explained:

> The stay makes clear it is the policy of the State of Utah to consolidate in one forum all matters attendant to the liquidation of a domiciled insurance company. That policy guarantees that the entire process is more than a simple liquidation of debt. Indeed, all decisions in Utah affecting the ultimate benefits to be accorded policyholders of a liquidated insurance company are circumscribed in one proceeding. Because the stay prevents conflicting rulings on claims, the unequal treatment of claimants, and the unnecessary and wasteful dissipation of the remaining funds of the insolvent insurer, the stay manifests a purpose of protecting policyholders. *Munich,* 141 F.3d at 593.

*Id.* Thus, the Court concluded that the Utah statute meets the test of having been enacted for the purpose of regulating the business of insurance.

Advanced Cellular contends that Section 40.210 of Puerto Rico's Insurance Code does not regulate or protect policyholders. Advanced Cellular cites *Garcia v. Island Program Designer, Inc.,* 4 F.3d 57 (1st Cir.1993) (Breyer, C.J.), in support. In *Garcia,* the Court examined whether a federal priority statute, 31 U.S.C. § 3713, which grants federal tax claims first priority to a bankrupt company's assets was reverse preempted by a Puerto Rico insurance company liquidation statute, P.R.Laws Ann. tit. 26, § 4019, which imposes filing deadlines for claims that could force those federal claims to the end of the priority queue. The First Circuit Court of Appeals, relying on the Supreme Court's holding in *Fabe, supra,* held that the federal statute was not reverse preempted by Puerto Rico's filing deadline provision under the provisions of the McCarran–Ferguson Act.

> The filing deadline (with its penalty of subordination for late claims) cannot be said to directly "regulate[ ] policyholders," for it is neither directed at, nor necessary for, the protection of policyholders ... The provision helps policyholders only to the extent that (and in the same way as) it helps all creditors. That is to say, by penalizing late-filers, the Commonwealth provision may bring about more speedy, orderly liquidation proceedings, thereby (perhaps) reducing the risks (and costs) of extending credit to the company.
>
> *Nor can one say that the Commonwealth's filing deadline provision is necessary for the protection of policyholders.* The Court in *Fabe* found that a priority for "administrative expense[s]" was necessary to protect policyholders, but, because, without such a priority, liquidation might never occur. *The Commonwealth's filing deadline at is-*

5. See also, Francine L. Semaya, Stacy L. Holmes & Daren M. Orzechowski, Insurance Insolvency in the United States 1998 Update: New Legal & Business Developments in a Changing Global Environment, 778 PLI/Comm 69, 85 (October 1998).

*sue here, however, is not necessary for a liquidation. Without it, liquidation would still prove manageable. At worst, the trustee's job would become slightly more difficult.... Relieving the trustee of the burden of searching for recorded liens provides policyholders with only indirect, speculative benefit of the kind that the Fabe Court found far too tenuous to prevent pre-emption.*

*Id.,* at 62 (emphasis ours).

The statutory provision in the case at bar is distinguishable from the filing deadline provision in *García v. Island Program, supra.* Contrary to the filing deadline provision at issue in *García,* the statutory provision which provides that when an insurance company is declared insolvent and placed into state delinquency proceedings, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere," P.R.Laws Ann. tit. 26, § 4021, is " 'aimed at protecting the relationship between the insurance company and its policyholders.' " 141 F.3d at 593. In *Munich, supra,* and *Davister, supra,* the Courts of Appeals for the Tenth and Fifth Circuits set forth numerous reasons for concluding that giving the state court ultimate control over all issues relating to the insolvent insurance company protects policyholders. First, giving the state court exclusive original jurisdiction over all delinquency proceedings allows the orderly adjudication of claims. Second, it prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country. Third, it eliminates the risk of conflicting rulings, piecemeal litigation of claims, and unequal treatment of claimants, all of which are of particular interest to insurance companies and policyholders, who are often relying on policies with the same or similar provisions. *Munich,* 141 F.3d at 593; *Davister,* 152 F.3d at 1281. Moreover, the fact that said provision also protects creditors

does not diminish or denigrate the ultimate purpose of protecting policyholders. *Davister,* 152 F.3d at 1281. Thus, contrary to the filing deadline provision in *García v. Island Program, supra,* the statutory provision in the instant case protects policyholders and provides them more than just an "indirect, speculative benefit of the kind that the Fabe Court found far too tenuous to prevent pre-emption". *García v. Island Program,* 4 F.3d at 62.

■ This Court concludes that the provision of Puerto Rico's Insurance Code which states that when an insurance company is declared insolvent and placed into state delinquency proceedings, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere," P.R.Laws Ann. tit. 26, § 4021, is a law enacted for the purpose of regulating the business of insurance. For the reasons set forth in *Munich* and *Davister,* this Court concludes that providing the liquidator original jurisdiction over all issues relating to the insolvent insurance company is "aimed at protecting the relationship between the insurance company and its policyholders."

We must next consider whether the Bankruptcy Code operates to "invalidate, supersede, or impair" the Insurance Code of Puerto Rico—specifically the provision which states that when an insurance company is declared insolvent and placed into state delinquency proceedings, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere," P.R.Laws Ann. tit. 26, § 4021. Advanced Cellular contends that a proceeding in the Bankruptcy Court requesting the turnover of the certificate of deposit pursuant to sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. §§ 542 & 543, would not in any way interfere with the delinquency proceedings carried out by the Commissioner under the supervision of Puerto Rico Court of First Instance. Advanced Cellular maintains that it has a property right over the Certificate of De-

posit; the Certificate was never an asset of the insolvent estate; and PRTC does not have a right to the Certificate because it did not filed a claim for that bond before its expiration date. Thus, Advanced Cellular argues that this dispute is not within the scope of the delinquency proceedings committed to the exclusive jurisdiction of Puerto Rico's Court of First Instance and the appointed liquidator. It contends that ordering the turnover of the certificate of deposit pursuant to sections 542 and 543 of the Bankruptcy Code does not present a conflict with the Insurance Code of Puerto Rico.

The Commissioner contends, and we agree, that whether Advanced Cellular has a property right over the Certificate of Deposit is a question that must be addressed within the liquidation proceedings. The Commissioner explains that "[s]ince under the Insurance Code of Puerto Rico all claims filed against an insurer ordered liquidated be filed before the appearing party, and said requirement was enacted by Puerto Rico as an essential part of its regulation of the business of insurance, [Advanced Cellular's] complaint must be regarded as a proposition to this Honorable Court to construe the Bankruptcy Code to invalidate, impair or supersede the Insurance Code of Puerto Rico."

The Supreme Court faced the question of when an "impairment" occurs in *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). In that case, the SEC sought to unwind the merger of two insurance companies which had been approved by the state of Arizona, on the basis that the merger was obtained through use of fraudulent misrepresentations. Arizona argued that the SEC's action would violate the McCarran–Ferguson Act. The Supreme Court, finding that the essential question was "whether the McCarran–Ferguson Act bars a federal remedy which affects a matter subject to state insurance regulation," disagreed. *Id.* at 462, 89 S.Ct. 564. The Court held:

The gravamen of the complaint was the misrepresentation, not the merger.... Nevertheless, [the state] contend[s] that any attempt to interfere with a merger approved by state insurance officials would "invalidate, impair, or supersede" the state insurance laws made paramount by the McCarran–Ferguson Act. We cannot accept this overly broad restriction on federal power. It is clear that any "impairment" in this case is a most indirect one.

*Id.* at 462–63, 89 S.Ct. 564. The courts have relied on this logic to conclude that " 'application of a federal law [will] be precluded only where the federal law expressly prohibit[s] acts permitted by state law, or vice versa.' " *Villafañe–Neriz v. FDIC*, 75 F.3d 727 (1st Cir.1996) (quotation omitted).

This Court holds that ordering that this contested matter be resolved in a forum other than the liquidation proceeding conflicts with Puerto Rico's Insurance Code which states that when an insurance company is declared insolvent and placed into state delinquency proceedings, "no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere," P.R.Laws Ann. tit. 26, § 4021. Said statute vests Puerto Rico's Court of First Instance with exclusive original jurisdiction over all delinquency proceedings. In this regard, Puerto Rico's Court of First Instance, Superior Court, San Juan Part ordered in *García v. El Fénix, supra*, that said court would "maintain jurisdiction ... over all issues, persons or claims for any amount related to El Fénix ..." Advanced Cellular, however, invoked the Bankruptcy Code to obtain what the state court expressly prohibited—an action against El Fénix's liquidator to be adjudicated in a forum outside the Court of First Instance with jurisdiction. This would certainly impair the progress of the orderly liquidation of all matters involving the insolvent company. Recognition of this consequence makes apparent the conflict between the

terms of the Bankruptcy Code and Puerto Rico's Insurance Code.

█ In light of the above, this Court concludes that the provision in the Puerto Rico Insurance Code which vests the Court of First Instance with exclusive original jurisdiction over all delinquency proceedings meets the requirements set forth in *Fabe, supra*, and is exempt from preemption under the McCarran–Ferguson Act.

Advanced Cellular further contends that the McCarran–Ferguson Act does not apply to the case at bar and cites *In re Petitions of Laitasalo*, 193 B.R. 187 (Bankr.S.D.N.Y.1996), in support. That case is inapposite to the case at bar. In its motion, Advanced Cellular oversimplifies its facts. In *Laitasalo*, the Insurance Commissioner, in her capacity as statutory rehabilitator of an insurance company, moved to dismiss the ancillary petition of the representatives of an insolvent alien reinsurance company, filed under Section 304 of the Bankruptcy Code, 11 U.S.C. § 304, on the grounds that the relief sought was barred by the McCarran–Ferguson Act. The Commissioner argued that granting the ancillary petitions superseded the reverse preemption granted to state statutes regulating the business of insurance. The Court held that the ancillary proceedings did not violate the McCarran–Ferguson Act because Section 304 "has international-law origins which are also different from the kind of congressional statutory action that the McCarran–Ferguson Act was enacted to address." *Id.*, at 192. Moreover, the Court held that the McCarran–Ferguson Act is consistent with federal laws that seek to protect national interests such as foreign policy, and that Section 304 embraces important national concerns such as the treatment of foreign debtors and creditors and international commerce. *Id.* Furthermore, the Court noted that if the Commissioner proceeded in a suit against the foreign reinsurance company in the state court, without any relief from the Bankruptcy Court, she could "convert an unsecured claim into a secured claim to the detriment of the other creditors" and this would "violate[ ] the equitable principles of the Bankruptcy Code and the Uniform Insurers Liquidation Act." *Id.*, at 193.

Advanced Cellular's reliance on *Laitasalo* is misplaced. The case involves different issues from the ones presented in the instant case. The reasons the Court gave for holding that the Section 304 proceeding did not violate the McCarran–Ferguson Act cannot not be applied to the case at bar.

Advanced Cellular also cites *Horwitz v. Zywiczynski (In re Zywiczynski)*, 210 B.R. 924 (Bankr.W.D.N.Y.1997), in holding that its complaint is an "in rem" action to recover property of the estate and is not precluded by the McCarran–Ferguson Act. In *Zywiczynski*, the Court considered whether the Eleventh Amendment precluded the Court from conducting an inquiry on whether a certificate of deposit not owned by the state, but claimed by the state, was "property of the estate" under 11 U.S.C. § 541 and subject to turnover under 11 U.S.C. § 542. *Id.*, at 925. The state claimed that because the Eleventh Amendment bars suits against a state without its consent, it could not be compelled to participate in a federal court proceeding to determine whether the certificate of deposit was property of the estate. *Id.* On the other hand, the trustee argued that this case "should not be relegated to some other forum for the mere purpose of determining whether he has any significant legal or equitable interest to pursue," specially when the estate is assetless. *Id.* The Court held that the Eleventh Amendment did not preclude it from conducting an inquiry as to whether the certificate of deposit was subject to turnover under the Bankruptcy Code. *Id.*, at 933. The Court explained that the statutory command set forth in 11 U.S.C. § 542 which states that one in possession of estate property turn such property over to the trustee implicates the *Ex Parte*

*Young* doctrine "whenever a state officer or agent refuses to obey ... [said] command ... and should suffice to establish the bankruptcy court's ancillary jurisdiction to preside over the inquiry into whether *Ex parte Young* exception applies." *Id.*, at 927–28.

Moreover, the Court in *Zywiczynski* held that "title in the state, or at least possession by the state, should be at the base of a state's Eleventh Amendment demurrer." *Id.*, at 932. The Court explained that if instead of the procedure set forth in the Bankruptcy Code for the recovery of property, the rulemakers had established a procedure in which the trustee simply " 'declare' ... [a] property ... to be property of the estate, give notice of the same, empower the trustee, by federal warrant, to seize it ... and then left it to adverse claimants ... [to] take the initiative to assert a claim ... [t]he Eleventh Amendment might not be implicated at all in such a process." *Id.* The Court then asked that "[i]f such in rem process would not violate the Eleventh Amendment when the state is a claimant, [why] is a prohibited 'suit' involved because the rulemakers have elected the cautious procedural path of summons and complaint?" *Id.* To this question, the Court responded that although a proceeding to recover property must be begun by the service of summons and a complaint, it is not a suit for Eleventh Amendment purposes. *Id.*

Advanced Cellular interprets the *Zywiczynski* decision as holding that a Section 542 proceeding to recover property is "an in rem action, which was not precluded by the 11th Amendment." Based on this, Advanced Cellular argues that its "complaint is an 'in rem' action to recover property of the estate under the bankruptcy law not covered by the McCarran–Ferguson Act. To allow Defendant's Motion to Dismiss to prosper would constitute the same as allowing an illegal 'taking' of Debtor's property." Advanced Cellular misconstrues the Court's analysis in *Zywiczynski.* The Court did not hold that a Section 542

proceeding is an in rem action. The Court simply stated that if the Federal Bankruptcy Rules had established an in rem action to recover property instead of the adversary proceeding set forth in Rule 7001, the proceeding would not have violated the Eleventh Amendment. The Court made this analysis to support its conclusion that although a Section 542 proceeding requires summons and a complaint, it is not "the type of common law 'suit' that the Eleventh Amendment's drafter" sought to protect the states from. Advanced Cellular's analysis of this case is clearly erroneous.

■ Finally, Advanced Cellular argues that the causes of action under Sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. §§ 542 & 543, involve core matters as defined under 28 U.S.C. § 157(b)(2). Since core proceedings are of the exclusive jurisdiction of the federal courts according to Section 1334(e) of the Judicial Code and bankruptcy judges may hear all core proceedings according to Section 157(b) of the Bankruptcy Code, Advanced Cellular claims that the Bankruptcy Court has jurisdiction over this adversary proceeding. Assuming, *arguendo*, that this contested matter is a core proceeding, the results of this case will not change because this Court will not have jurisdiction since the Bankruptcy Code is reverse preempted by the McCarran–Ferguson Act. And even assuming *arguendo* that the Bankruptcy Court does have jurisdiction, this Court would abstain from hearing this adversary proceeding under 28 U.S.C. § 1334(c)(1). As in *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940), this Court concludes that "under the circumstances of this case ... it is desirable to have the litigation proceed in the State courts...." First, in enacting Section 40.210 of the Insurance Code, the Legislative Assembly established that "it is the policy of [Puerto Rico] to consolidate in one forum all matters attendant to the liquidation of a domiciled insurance company." *Davister, supra*, 152

F.3d at 1281. Second, by abstaining, this Court "eliminates the risk of conflicting rulings, piecemeal litigation of the claims, and unequal treatment of claimants...." *Munich, supra,* 141 F.3d at 593.

### Motion For Entry Of Default Judgment

Advanced Cellular also requests entry of default judgment because the Commissioner failed to file a responsive answer within thirty (30) days after issuance of the summons as required by Rule 7012 of the Federal Rules of Bankruptcy Procedure.[6] The complaint was filed on August 5th, 1998, and summonses were issued by the Deputy Clerk on that same date. A copy of the complaint and summons was personally served to Jaime Mayol, liquidation receiver of El Fénix, and to his legal counsel, Juan A. Moldes. Accordingly, the Commissioner was required to serve an answer to the complaint by September 4th, 1998, at the latest. The Commissioner filed the Motion to Dismiss and Brief in Support on September 11, 1998. Thus, the Commissioner filed its reply six (6) days after it was due.

 Even though the Commissioner's Answer was served in excess of the thirty (30) days deadline prescribed by Bankruptcy Rule 7012(a), this Court finds that Advanced Cellular's Motion for Entry of Default must be denied. In the first place, "[c]ourts prefer to decide cases on their merits." *National Union Fire Ins. Co. v. Main (In re Main),* 111 B.R. 535, 539 (Bankr.W.D.Pa.1990) citing *In re Cantwell,* 17 B.R. 639, 641 (Bankr.E.D.Pa. 1982). "Judgment by default is not favored" and is limited to those case where there is *"a clear pattern of delay and contumacious conduct by the defaulting party." Id.* (Emphasis ours). In the case at bar, the Commissioner has not exhibited such conduct. The worst that can be said about the Commissioner's conduct is that

he filed an answer to the complaint six days after it was due. Secondly, Advanced Cellular has not shown that it has been prejudiced in any way by the Commissioner's failure to respond to the complaint by September 4th, 1998. Third, the Commissioner asserted a meritorious defense in the Motion to Dismiss. *Id.* After taking these factors into consideration, this Court concludes that "entry of default judgment would be too draconian a remedy for Debtors' failure to comply with Bankruptcy Rule 7012(a)." *Id.,* at 539–40.

### V. Conclusion

Based upon the foregoing, the Court grants the Commissioner's Motion to Dismiss. The Court finds that dismissal of the action is required because the Bankruptcy Code is reverse pre-empted under the McCarran–Ferguson Act to the extent it permits Advanced Cellular to bring an action against the Commissioner for assets in possession of a delinquent insurance company in a forum other than Puerto Rico's Court of First Instance with jurisdiction. Moreover, the Court denies Advanced Cellular's Motion for Entry of Default Judgment.

The Clerk shall enter judgment.

---

6. Rule 7012(a) provides:
 If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons except when a different time is prescribed by the court.