In re AMWEST INSURANCE
GROUP, INC., Debtor.

**L. Tim Wagner, Director of Insurance of the State of Nebraska, In His Capacity as Liquidator for Amwest Surety Insurance Co., Plaintiff,**

v.

**Amwest Insurance Group,
Inc., Defendant.**

**Bankruptcy No. SV 01–17081 GM.
Adversary No. SV 02–01127 GM.**

United States Bankruptcy Court,
C.D. California.

Oct. 24, 2002.

Gregory M. Salvato, Claire D. Johnson, Parker, Milliken, Clark & O'Hara & Samuelian, A Professional Corporation, John H. Binning, Robert L. Nefsky, Remboldt, Ludtke & Berger LLP, Lincoln, Nebraska, for plaintiff.

Jose A. Velasco, Krishna Malhotra, Malhotra, Malhotra & Velasco, Los Angeles, CA, for defendant.

## MEMORANDUM OF OPINION ON PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION ON THE FIRST CLAIM FOR RELIEF RE BANKRUPTCY COURT JURISDICTION

GERALDINE MUND, Chief Judge.

### I. INTRODUCTION

This memorandum of opinion deals with the question whether the Bankruptcy Court has jurisdiction over a tax allocation agreement already subject to a pending liquidation proceeding in a Nebraska District Court. The agreement controls the allocation of an asset held by the Debtor consisting of approximately $2.75 million in tax refunds. Specifically, the opinion addresses whether (1) this Court is preempted from considering the issue by the McCarran Ferguson Act, and (2) the Court should abstain from hearing this matter.

### II. FACTS

Amwest Insurance Group, Inc. (the "Debtor") is an insurance holding company incorporated in the state of Delaware and headquartered in California. The debtor has a number of subsidiaries, including Far West Insurance Company ("Far West") and Amwest Surety Insurance Company ("Amwest").

On January 1, 1995 the Debtor and Amwest entered into a tax allocation agreement (the "Agreement" or "Tax Allocation Agreement"). The Agreement was not

filed with and approved by the Nebraska Department of Insurance until 1998.

Amwest generated income between 1997 to 1999, and paid tax on that income. However, in 2000, Amwest suffered losses of $36 million. As a result, Amwest became entitled to approximately a $2.75 million tax refund.

On June 7, 2001, the Liquidator for the State of Nebraska filed an insolvency proceeding against Amwest in the District Court for Lancaster County, Nebraska (the "Liquidation Court"), and the tax refund became part of the liquidation estate.

This Chapter 11 bankruptcy case was filed by the Debtor on July 24, 2001. The tax refund then became part of the bankruptcy estate. 11 U.S.C. § 541(a).[1] Debtor is in possession of the tax refund (the refund was sent to debtor in its capacity as agent by the Internal Revenue Service).

On October 19, 2001, L. Tim Wagner, Director of Insurance of the State of Nebraska, In His Capacity as Liquidator for Amwest Surety Insurance Company (the "Liquidator") filed a motion for relief from stay to proceed with the liquidation proceeding. However, the motion was denied without prejudice on December 18, 2001. On January 28, 2002, the Liquidator filed an adversary proceeding against the Debtor for (1) declaratory relief on the issue of jurisdiction, (2) declaratory relief regarding rights to the tax refund, and (3) injunctive relief. Thereafter, on June 21, 2002, the Liquidator filed a motion for partial summary judgment on the first claim for relief to resolve the issue of Bankruptcy Court jurisdiction.

## III. LEGAL ANALYSIS

A. *Does the Bankruptcy Court have jurisdiction?*

■ During the hearing on this motion, the Liquidator has admitted to having filed a substantial proof of claim in this bankruptcy case. As such, pursuant to Ninth Circuit case law, the Liquidator has subjected himself to Bankruptcy Court jurisdiction. *In re G.I. Industries, Inc.,* 204 F.3d 1276, 1279 (9th Cir.2000). The Court also has jurisdiction to decide what is property of the estate. *See* 28 U.S.C. § 157(b)(2)(A), (E), (O); 11 U.S.C. § 541(a). Further, pursuant to 28 U.S.C. § 1334(e), the District Court (and the Bankruptcy Court when a reference is in place) has exclusive jurisdiction over property of the estate. Therefore, the remaining issue on summary judgment is whether the exercise of federal jurisdiction is reverse preempted by the ongoing Nebraska liquidation, and which court shall interpret the terms of the Tax Allocation Agreement.

B. *Is the application of federal jurisdiction reverse preempted by the McCarran–Ferguson Act?*

■ The McCarran–Ferguson Act ("MFA") provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, a federal statute is reverse-preempted under MFA if (1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the federal statute would invalidate, impair or supersede the state statute. *United States Dept. of Treasury v. Fabe,* 508 U.S. 491, 501, 113 S.Ct. 2202, 2208, 124 L.Ed.2d 449 (1993).

---

**1.** All references to "sections" herein are to 11 U.S.C. § 101 et seq., unless noted otherwise.

The focus of insurance laws is upon the relationship between the insurance company and its policyholders. This includes the types of policies issued, their reliability, interpretation and enforcement, as well as other activities closely related to the insurance company's status as a reliable insurer. *Id.,* citing *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969) (citations omitted). Moreover, "laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance" also fall into this category. *Fabe,* 508 U.S. at 505, 113 S.Ct. at 2210 (citations omitted).

Bankruptcy proceedings and insurance company insolvency proceedings are similar in that their goal is either to reorganize or liquidate the debtor. *See In re Advanced Cellular Systems,* 235 B.R. 713, 717–18 (Bankr.P.R.1999). The object of both is to group the assets of the debtor or the insolvent insurance company into one estate for distribution to creditors according to certain priorities. However, bankruptcy cases are governed by federal law which expressly exempts insurance companies from its reach. 11 U.S.C. § 109(b)(2).

On the other hand, insurance insolvency law is regulated by state law. A conflict arises when a bankruptcy debtor asserts rights over assets claimed by the liquidator of an insurance company. When this occurs, the Bankruptcy Court must determine whether bankruptcy law is reverse preempted by insurance state law under the MFA.

C. *Are the elements for reverse preemption satisfied?*

1. *Does the Bankruptcy Code specifically relate to the "business of insurance"?*

In this case, it is clear that the Bankruptcy Code in general, and § 541 which defines property of the bankruptcy estate in particular, does not relate to the business of insurance. *See Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)(bankruptcy statutes do not "specifically relate" to insurance). However, it is not as clear whether the state statute in question specifically relates to "the business of insurance." Moreover, the Court must analyze whether the exercise of federal jurisdiction would invalidate, impair or supersede the state statute.

2. *Is the Tax Allocation Agreement directly related to the "business of insurance"?*

The purpose of the Nebraska Insurance Holding Company System Act (the "Act") is "to protect policyholders by probing the competence of those seeking to control insurance companies." *CenTra, Inc., v. Chandler Ins. Co.,* 248 Neb. 844, 856, 540 N.W.2d 318, 328 (Neb.1995), *cert. denied, Centra, Inc. v. Chandler Ins. Co., Ltd.,* 517 U.S. 1191, 116 S.Ct. 1681, 134 L.Ed.2d 783 (1996) (citation omitted). The Act applies equally, regardless of whether the holding company is a Nebraska resident or an out-of-state entity. *Id.*

In *CenTra,* the Supreme Court of Nebraska considered the scope of the MFA in a situation where the Act clashed with federal securities regulation laws. Specifically, the court considered whether a restriction on the sale of stock in a domestic insurer was sufficiently connected to "the business of insurance" to be shielded by the MFA from the Commerce Clause. *Id.* at 248 Neb. at 859, 540 N.W.2d at 330. In its analysis, the court considered the three-part test enunciated by the Supreme Court of the United States: (1) does the practice in question relate to the transferring and spreading of risk, (2) is the practice an integral part of the policy relation-

ship between the insurer and the insured, and (3) is the practice limited to entities within the insurance industry. *Id.*, citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In *CenTra*, the Nebraska Supreme Court held that the above criteria supported the court's finding that the Insurance Department's order restricting transfer of insurer's stock and requiring such transfer to be approved by the Department of Insurance did relate to "the business of insurance." *Id.*, 248 Neb. at 860, 540 N.W.2d at 330.

 Consolidated tax allocation agreements are mentioned in the Act at § 44–2132. Pursuant to that section, every insurer subject to registration in the State of Nebraska (including entities authorized to do business in Nebraska which are members of an insurance holding company system) shall file a registration statement disclosing any consolidated tax allocation agreements between the insurer and its affiliates. NEB. REV. STAT. § 44–2132(2)(c)(viii).[2] The Act does not elaborate on the purpose of a consolidated tax allocation agreement. Contrary to Debtor's statement that tax allocation agreements are controlled by federal tax law, such agreements are in fact regulated by state corporate law. *In re Bob Richards Chrysler–Plymouth Corp., Inc.*, 473 F.2d 262, 264 (9th Cir.1973), *cert. denied, Western Dealer Management, Inc. v. England*, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973). In fact, the Agreement at pg. 4, para. (f), provides that it shall be governed by Nebraska law.

 In this case, as in *CenTra*, the elements of *Pireno* are satisfied. Under Nebraska law, the principal purpose of a tax allocation agreement is to permit an insurance company that is a member of a consolidated group under federal income tax law to include its separate federal income taxes recoverable as an asset on its financial statements prepared under statutory insurance accounting rules. *See* NEB. REV. STAT. §§ 44–322(1), 44–2132(2)(C)(viii). However, without filing with and authorization by the Director of Insurance, a tax allocation agreement primarily serves an internal function; but once filed, it appears as an asset of the insurance company and is relied upon by the public and creditors in choosing and maintaining coverage.

The Tax Allocation Agreement was entered into in 1995, but was not filed and approved by the Nebraska Department of Insurance until 1998. Nebraska law provides that once a federal income tax recoverable is listed on the insurance company's financial statements, it is accepted as an insurance asset for regulatory purposes. In fact, Nebraska insurance statutes and regulations define federal income tax recoverables as an asset of a Nebraska domestic insurance company. Thus, an interpretation of the Tax Allocation Agreement directly involves the regulation of insurers and holding companies. Further, such interpretation impacts future distributions to policyholders.

As the Liquidator explained to the Court at the hearing on this motion, the State of Nebraska does not have a secondary insurance system from which the policyholders in this case could be paid. Therefore, the

---

**2.** The Liquidator took the position that the Agreement was subject to approval by the Nebraska Department of Insurance pursuant to § 44–2133(2)(d) as a cost-sharing agreement and as such relates to the business of insurance. However, in light of today's rul-

ing, it is unnecessary for the Court to decide this issue. In any case, the Agreement was submitted for approval in an abundance of caution and was indeed approved by the Department of Insurance.

only funds available to the policyholders are those at issue. Ninety thousand policyholders in fifty states are relying on the recovery to be marshaled by the Liquidator. If there is not enough money to go around, policyholders will receive only a partial distribution. Whether a domestic insurer will remain liable to its policyholders directly relates to the transferring and spreading of risk. *CenTra*, 248 Neb. at 860, 540 N.W.2d at 330.

As also represented by the Liquidator at the hearing on this motion, the purpose of the Nebraska Insurance Act is to marshal assets and pay claims of policyholders and other claimants. In this case, no matter which party ultimately obtains the right to the tax refund, there will be insufficient money to pay the full amount to policyholders. As such, the interests of policyholders are directly at stake.

Moreover, the Department of Insurance has the ability and statutory responsibility to oversee the relationship between the insurer and its policyholders. As in *CenTra*, the relationship between the insurer and affiliated companies may cause the insurer to become financially unstable, be it through a change in ownership or allocation of tax losses and benefits. As such, the Department of Insurance is in the best position to control any financial shifts that may affect an insurer, and make sure that the interests of policyholders are not jeopardized. *Id.*, 248 Neb. at 860–61, 540 N.W.2d at 330–31. Finally, the practice is limited to entities within the insurance industry, i.e., the insurer, policyholders, and the holding company which is subject to Nebraska insurance regulations. *See* §§ 44–2132; 44–322.

3. *Would the exercise of jurisdiction by the Bankruptcy Court "invalidate, impair or supersede" state law?*

The Liquidator argues that this Court does not have jurisdiction to interpret a tax allocation agreement that was filed and approved pursuant to the Nebraska Holding Company Act. On the other hand, the Debtor's argument is that the Agreement is no longer at issue because it has been approved by the Insurance Commissioner, and there is no dispute as to the substance of the Agreement. Instead, Debtor argues that the issue should turn on the possession of the tax refund. Moreover, the Debtor contends that any further interpretation of the Agreement would be subject to tax law, not insurance law. As such, the Debtor argues that this Court can interpret the Agreement and determine ownership.

Both parties discuss the Supreme Court case of *Fabe*, *supra*, which dealt with a conflict between application of claim priority contained in a state insolvency statute and priorities contained in the Bankruptcy Code. Specifically, the Court considered the question whether the state claim priority statute was exempted from preemption. The Court held that the state statute was reverse preempted under MFA to the extent that it protected policyholders. *Fabe*, 508 U.S. at 508, 113 S.Ct. at 2212. However, to the extent that the statute was not enacted for the purpose of regulating "the business of insurance" but designed to further the interest of creditors instead of policyholders, reverse preemption did not apply. *Id.*

In *Fabe*, the Supreme Court underscored that the principal focus of the phrase "the business of insurance" should be on the relationship between the insurance company and its policy holders. *Id.*, 508 U.S. at 501, 113 S.Ct. at 2208 (citation omitted). However, this Court questions the applicability of *Fabe* to the facts of this case. *Fabe* is distinguishable on its facts in that in *Fabe*, there was a clash between substantive law, i.e., application of the state priorities would not have had the

same result as application of federal priorities. In this case, the state and federal law is identical because the parties seek interpretation of a tax allocation agreement governed by the law of Nebraska. Thus, the substantive clash present in *Fabe* does not exist here.

■ In this case, there is a parallel tax allocation agreement between Amwest and Far West pending in front of the Liquidation Court. Although the Liquidator has not explained how the two agreements work together, he did represent that the agreements were approved at the same time and are designed to work in conjunction with each other. Thus, it appears to this Court that if she were to decide the allocation of the funds between Debtor and Amwest, this determination may conflict with the Liquidation Court's ruling regarding the tax allocation between Amwest and Far West. Since this would impair the progress of an orderly liquidation in Nebraska, this element of MFA is satisfied. *See Advanced Cellular Systems*, 235 B.R. 713, 724–25 (Bankr.D.P.R.1999).

D. *Should the Bankruptcy Court abstain from exercising jurisdiction?*

■ On an alternative theory, the Liquidator urges the Court to abstain from hearing this matter. This Court holds that mandatory abstention does not apply because this is a core matter in that the question at issue concerns the determination of what is property of the bankruptcy estate and is akin to a turnover proceeding concerning the administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A), (E), (O); 11 U.S.C. § 541(a). Thus, this Court has proper jurisdiction. However, since it is possible for two courts to concurrently hold and exercise jurisdiction, the Court will consider whether voluntary abstention is applicable.

The case of *Wolfson v. Mutual Benefit Life Ins. Co.*, 51 F.3d 141 (8th Cir.1995), *reh'g denied*, discussed by the parties in their pleadings, held that a federal court should abstain from deciding the merits of an ERISA claim against an insurer where the insurer was already undergoing rehabilitation proceedings in state court. *Id.* at 141. In *Wolfson*, the Eight Circuit considered both the Burford and *Colorado River* abstention doctrines and analyzed case law applying abstention in different types of cases. Although the Supreme Court in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), rejected the application of the *Burford* abstention doctrine in cases where only legal (as opposed to equitable) relief is sought, the principles enunciated in *Wolfson* are still good law. Since this is a court of equity and the relief sought herein is equitable in nature, the Court finds the *Wolfson* analysis applicable.

Pursuant to *Wolfson*, this case fits the category where an "insolvent insurer or its receiver has asserted a claim in the federal action which, if successful, will enhance the insolvent's estate." *Id.* at 145. As *Wolfson* points out, rulings within this category defy generalization, as each case is decided on its own facts. *Id.* (citations omitted). However, "the abstention issue often turns on the relative importance to the state insolvency proceeding of litigating a particular claim in that proceeding." *Id.*

■ In making the determination to abstain, the court should consider the following factors: (1) whether the suit is based on a cause of action which is exclusively federal, (2) whether the suit requires determination of issues directly relevant to the liquidation proceeding, (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate the issue in question, and (4) wheth-

er difficult or unusual state laws are at issue. *Id.,* 51 F.3d at 146–47.

Applying these facts to the case at hand, it is clear that the interpretation of the Tax Allocation Agreement is based on state law. *In re Bob Richards, supra,* 473 F.2d at 264. Thus, Debtor's argument that federal tax law controls the Agreement is incorrect. In fact, the Agreement itself purports to be governed by Nebraska law. *See* Agreement at pg. 4, para. (f). Second, it is also apparent that in interpreting the Tax Allocation Agreement, this Court would have to determine issues directly relevant to the Nebraska liquidation proceeding in that the Court would have to decide the question of ownership of the tax refunds. Whether the tax refunds belong to Amwest or to Debtor directly impacts how much policyholders in the Amwest liquidation would receive on account of their claims. Third, the laws of Nebraska dealing with insurance insolvency and holding companies indicate a strong preference that any questions arising under these laws be dealt with by the Nebraska Director of Insurance in the appropriate Nebraska forum. NEB. REV. STAT. § 44–4804(5). Lastly, although this Court does not believe that difficult or unusual state law questions are at issue in dealing with the interpretation of a contract, the majority of the abstention factors discussed in *Wolfson* tip in the Liquidator's favor.

Moreover, other equitable considerations support the Liquidator's position. The Debtor in this case has not shown a viable prospect of reorganization. It has no employees, business, assets or prospects. There is still no proposed plan on file and Debtor's largest creditor, Union Bank, has urged the Court to convert the case to Chapter 7 liquidation. As such, there are two competing interests: one is the viability of the Debtor's reorganization, the other is making sure policyholders get paid. Since the prospects of reorganizing the Debtor are weak, the scale tips in favor of the Liquidator and Amwest's policyholders.

Another reason to favor abstention is that the Liquidation Court is concurrently considering the interpretation of a tax allocation agreement between Amwest and Far West, which may work in conjunction with the Agreement between Amwest and Debtor. Therefore, pursuant to the *Colorado River* abstention doctrine, it is prudent to allow one court to resolve issues concerning both agreements. *See Wolfson,* 51 F.3d at 145 (citations omitted).

Finally, it is much more cost-effective for the Liquidator to litigate in one forum. Debtor assumed the risk of faraway litigation by engaging in business in Nebraska. Thus, although the Debtor has limited financial resources and appears to be administratively insolvent, it is the Debtor and not the Liquidator who should bear the risk of having to litigate in a forum non conveniens.

## IV. CONCLUSION

In conclusion, this Court finds that the interpretation of the Tax Allocation Agreement in this case is directly related to "the business of insurance" and thus triggers the application of the MFA. In addition, exercise of federal jurisdiction would impair state law. Since the balance of equities tips in favor of the Liquidator, this Court also finds it is appropriate to exercise voluntary abstention and allow the Nebraska Liquidation Court to interpret the Agreement.