JOHN C. PORFILIO, Circuit Judge.
This case considers whether the district court erred by abstaining from enforcing arbitration of a dispute between Davister Corporation and the Liquidator of. United Republic Life Insurance Company (United), an insurance company domiciled in Utah and currently under liquidation in insolvency proceedings in Utah state court. We believe this question must be resolved under the McCarran-Ferguson Act, not under other doctrines of abstention. So focused, we hold the district court correctly refused to compel arbitration. We therefore affirm[1] its judgment.
The facts of this matter are relatively simple. Prior to insolvency, United had entered into a transaction with Davister in which it agreed to transfer some of its stock to Davis-ter in exchange for 100% of the stock of R.G. Acquisition Corporation (RGA). As part of that agreement, United was to obtain certain real property interests in Waco, Texas, that were the principal assets of RGA. Subsequently, the Commissioner of the Utah Insurance Department notified United this and other similar transactions were improper and must cease. Moreover, the Commissioner advised United the transaction involving the stock of RGA “must be reversed” because United had not obtained required authorization from the commission to exchange its stock for the stock of RGA.
Before the reversal was accomplished, however, the Commissioner filed an action in Utah state court to seize control of the company. He also filed an action in Texas state court to gain control of the Waco real property interests. Davister intervened in the Texas action seeking rescission of its transaction with United, claiming the Utah Commissioner’s order to reverse caused a failure of consideration in its agreement with United. Davister also sought a judgment establishing its right to the Texas property interests.
Meanwhile, in the Utah state court action, the Commissioner obtained an order liquidating United and appointing him the Liquidator. Contemporaneously, the state court issued an order staying all claims against United. See Utah Code Ann. § 31A-27-317 (“The filing of a petition for liquidation of a domestic insurer or of an alien insurer domiciled in this state stays all actions and all proceedings against the insurer-”). That stay was honored by the Texas court which also stayed all of Davister’s claims pending in that forum, although the court permitted the continuation of the balance of the Texas action.
Davister then filed this case against United and the Commissioner (Defendants) in the United States District Court for the District of Utah to compel arbitration of the dispute over the Texas real property interests in accordance with the agreements between Davister and United. In addition, Davister sought a stay of the entire Texas action and the Utah liquidation. After a hearing on the merits, the federal district court abstained from compelling arbitration and refused to grant the stay requested by Davister. Dav-ister then brought this appeal.
On appeal, Davister argues clear national policy and the Federal Arbitration Act mandate arbitration in place of state litigation when the parties have contracted to submit disputes to arbitration, citing Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Davister contends once a federal court determines a dispute exists between the parties *1279 which they have agreed to arbitrate, it must stay all other proceedings and compel arbitration. Houlihan v. Offerman & Co., 31 F.3d 692, 695 (8th Cir.1994). Defendants respond that abstention was proper on grounds of comity, but if not on that basis, certainly under the McCarran-Ferguson Act. Defendants rely upon 15 U.S.C. § 1012 which states: “No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance,” contending it trumps the federal policy favoring arbitration. Defendants also urge their position is supported by United States v. Fabe, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).
In Fabe, the Court was called upon to determine whether in an Ohio statutory procedure for the liquidation of an insolvent insurance company the United States was entitled to assert a priority claim granted it under a federal statute. “In order to resolve this case, we must decide whether a state statute establishing the priority of creditors’ claims in a proceeding to liquidate an insolvent insurance company is a law enacted ‘for the purpose of regulating the business of insurance,’ within the meaning of § 2(b) of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b).” Fabe, 508 U.S. at 493, 113 S.Ct. 2202.[1]
The United States maintained the Ohio liquidation act could not have been enacted for the purpose of regulating the business' of insurance because it merely determined the order in which claims of creditors would be paid. It also contended the statute did not deal with the insurer-insured relationship because it pertained only to resolution of conflicts between policyholders and other creditors of the insolvent insurance company.
The government grounded its argument on two cases, Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982), and S.E.C. v. National Sec., Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Pireno held there are three factors to be considered in determining what constitutes the business of insurance: (1) does the practice have the effect of transferring or spreading a policyholder’s risk; (2) is the practice integral to the relationship of the insurer and the insured; (3) is the practice limited to entities within the insurance industry? Pireno, 458 U.S. at 129, 102 S.Ct. 3002. National Sec. held: “Statutes aimed at protecting or regulating [the] relationship [between insured and insurer], directly or indirectly are laws regulating the ‘business of insurance.’ ” National Sec., 393 U.S. at 460, 89 S.Ct. 564.
The Court was unconvinced. Considering Pireno together with Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), both of which held McCarranFerguson inapplicable to “ancillary activities” within the insurance industry, see Fabe, 508 U.S. at 503, 113 S.Ct. 2202, the Court concluded the business of insurance was most importantly involved with the “performance of an insurance contract.” Id. at 503-05, 113 S.Ct. 2202. The Court then explained:
The broad category of laws enacted “for the purpose of regulating the business of insurance” consists of laws that possess the “end, intention, or aim” of adjusting, managing, or controlling the business of insurance. This category necessarily encompasses more than just the “business of insurance.” ... [W]e believe that the actual performance of an insurance contract is an essential part of the “business of insurance.” Because the Ohio statute is “aimed at protecting or regulating” the performance of an insurance contract, it follows that it is a law “enacted for the purpose of regulating the business of insurance” within the meaning of the first clause of § 2(b) [15 U.S.C. § 1012(b) ].
Id. at 505, 113 S.Ct. 2202 (citations omitted).
Although the government maintained the Ohio liquidation statute was a bankruptcy *1280 law and not an insurance statute, the Court disagreed. “The primary purpose of a statute that distributes the insolvent insurer’s assets to policyholders in preference to other creditors is identical to the primary purpose of the insurance company itself: the payment of claims made against policies.” Id. at 505-06, 113 S.Ct. 2202.[2]
Becaúse Fabe dealt only with competing claims for priority of distribution in a liquidation setting, it does not completely inform our decision. We are called upon to go beyond that point to decide whether rights created under the Federal Arbitration Act must give way to a state court blanket stay in the liquidation setting. Our quest leads us to Munich American Reinsurance Co. v. Crawford, 141 F.3d 585 (5th Cir.1998).
In that case, the Fifth Circuit was called upon to decide “whether state laws governing insurance company delinquency proceedings reverse pre-empt the [Federal Arbitration Act] under the McCarran-Ferguson Act.” Munich, 141 F.3d at 587. The court held they did.
At issue in Munich was whether claims asserted by two reinsurers to certain policy proceeds .arising out of reinsurance agreements between an insolvent Oklahoma insurance company and the claimants "must be resolved by arbitration. The Oklahoma Insurance Commissioner, who was the liquidator of the insolvent company and holder of the proceeds, refused to submit to arbitration.
The claimants filed an action in federal district court to compel arbitration under the Federal Arbitration Act, and the district court granted relief. The Fifth Circuit reversed the judgment, stating:
[T]he specific provisions of the statute at issue here-vesting exclusive original jurisdiction of delinquency proceedings in the Oklahoma state court and authorizing the court to enjoin any action interfering with the delinquency proceedings-are laws enacted clearly for the purpose of regulating the business of insurance. These provi- ' sions give the state court the power to decide all issues relating to disposition of an insolvent insurance company’s assets, including whether any given property is part of the insolvent estate in the first place.
Id. at 592-93 (emphasis added); see also Murff v. Professional Med. Ins. Co., 97 F.3d 289, 291 (8th Cir.1996) (“We conclude that the Missouri statute purporting to stay all actions against an insolvent insurer is ‘a law regulating the business of insurance.’ It protects policyholders because it preserves the assets of the insolvent insurer’s estate, thereby enhancing thé ability of an insolvent insurance company to perform its contractual obligations.”).
The court continued, quoting from Grimes v. Crown Life Ins. Co., 857 F.2d 699, 705 (10th Cir.1988), “Oklahoma has not only adopted a comprehensive scheme to oversee liquidation of insolvent insurers, it has provided a particular court ... to oversee liquidation proceedings.” Munich, 141 F.3d at 593. This, the Fifth Circuit noted, is “a special relationship ■ [which] contributes markedly to the orderly liquidation or rehabilitation of the insurance company and the adjudication of claims against it.” Id. Moreover, giving the state court ultimate control over all issues relating to the insolvent insurance company is “aimed at protecting the relationship between the insurance company and its policyholders.” Id.
Dispatching the reinsurers’ argument that the state law which consolidated disposition of all claims, including those of creditors other than policyholders, was not a law enacted for the purpose of regulating the business of insurance, the court turned to Fabe. The Fifth Circuit reminded that Fabe decided the Ohio law dealing with insolvency preferences for administrative expenses was “reasonably necessary” to the goal of protecting policyholders, hence, that, law was enacted for the purpose of regulating the business of insurance. Munich, 141 F.3d at 593 (quoting Fabe, 508 U.S. at 509, 113 S.Ct. 2202). The court applied the same reasoning *1281 to the Oklahoma liquidation proceedings in state court, holding that although some of the benefits from the liquidation could devolve upon non-policy holding creditors, none of those which inure to the benefit of policyholders “are insignificant or attenuated,” and are “indistinguishable from the Ohio provision giving a preference to administrative expenses in Fabe.” Thus, the court concluded, “these provisions were enacted for the purpose of regulating the business of insurance.” Id. at 594.[3]
We hold the same result applies here. The Utah statute consolidating all claims against a liquidating insurer, by its nature and express terms, was enacted to protect policyholders. See Utah Code Ann. § 31A-27-101(2). By offering benefits to other creditors, that ultimate purpose is neither diminished nor denigrated. Adding to the stated statutory purpose is the statutory blanket stay against all proceedings against the insolvent insurance company.[4]
The stay makes clear it is the policy of the State of Utah to consolidate in one forum all matters attendant to the liquidation of a domiciled insurance company. That policy guarantees that the entire process is more than a simple liquidation of debt. Indeed, all decisions in Utah affecting the ultimate benefits to be accorded policyholders of a liquidated insurance company are circumscribed in one proceeding. Because the stay prevents conflicting rulings on claims, the unequal treatment of claimants, and the unnecessary and wasteful dissipation of the remaining funds of the insolvent insurer, the stay manifests a purpose of protecting policyholders. Munich, 141 F.3d at 593. We think it evident the Utah statute meets the test of having been enacted for the purpose of regulating the business of insurance.[5]
That decision leaves us with only the third part of the Fabe test, that is, whether, under the McCarran-Ferguson Act, the Federal Arbitration Act “invalidate[s], impair[s], or supercede[s]” § 31A-27-317(a). Again, we believe the answer is obvious. Allowing a putative creditor to pluck from the entire liquidation proceeding one discrete issue and force arbitration contrary to the blanket stay entered by the Utah state court would certainly impair the progress of the orderly resolution of all matters involving the insolvent company. Unquestionably, that result would directly impact the policyholders because it deals with a purported asset of the insurance company that could be apportioned to them. Recognition of that consequence makes apparent the conflict between the terms of the FAA and the Utah’ law. Neither Fabe nor any other authority holds that *1282 the applicability of the McCarran-Ferguson Act is dependant upon the existence of a Utah law “mandating against arbitration” as the dissent contends. With all due respect; that approach turns the Fabe test inside out. The issue is not whether Utah prohibits arbitration,- but whether enforcing arbitration invalidates, impairs, or supercedes the enforcement of the state process designed to protect the interests of policyholders. We agree wholeheartedly with the Fifth Circuit that “[r]egardless of the nature of the reinsurers’ action, ordering it resolved in a forum other than the receivership court nevertheless conflicts with [state] law giving the state court the power to enjoin any action interfering with the delinquency proceedings.” Munich, 141 F.3d at 595.
Indeed, as the district court in .this case cogently observed:
I am just curious if we have ... a state judge overseeing the liquidation, and you have ... a stay order entered by him, and you’re seeking some kind of relief in reference to either assets or claims of another kind against the company that is in receivership, ordinarily wouldn’t you be over there in front of that state court judge saying, look, here is a problem, tell this receiver that you’re overseeing to do something?
The district court, of course, was right.
Our resolution does not leave Davister without a remedy. Indeed, it can bring this matter before the liquidation court, and if arbitration is the best way to resolve the conflict, it can be ordered by that court under its own aegis. Moreover, if the stay is unfairly limiting Davister’s pursuit of its rights in Texas, the Utah court can certainly grant relief from that stay as well.’ A federal court need not interfere in the process.
AFFIRMED.

. The Court's analysis produced what we have come to call a three-part test for the determination of whether the McCarran-Ferguson Act should be applied: (1) does the federal statute at issue "specifically relate to the business of insurance”: (2) was the state statute enacted "for the purpose of regulating the business of insurance”; (3) would application of the federal statute "impair, interfere, or supercede” the state statute? Fabe, 508 U.S. at 500-01, 113 S.Ct. 2202. Part (1) of the test is not an issue in this case because the Federal Arbitration Act does not specifically relate to the business of insurance.

. Contrary to the position advanced in the dissent, we do not view Fabe to permit all actions arising under a state insurance liquidation statute to "automatically fall under the purview of the McCarran-Ferguson Act.” As we have noted, a carefully constructed three-part test must be satisfied before the Act can apply. This examination must be implemented on a case-by-case basis, and the result will be dictated by the precise statutes involved in each case.

. The dissent overreads Munich. The court did not in any way adopt a "per se rule of reverse preemption of federal enforcement of all arbitration agreements against an insurance company in insolvency proceedings.” To the contrary, the Fifth Circuit carefully conducted the three-part Fabe test and concluded the Oklahoma law vesting exclusive jurisdiction in the state court and providing for a blanket stay of all other proceedings was "clearly for the purpose of regulating the business of insurance.” Munich, 141 F.3d at 592-93. Nothing contained within the court's reasoning or inferable therefrom suggests the adoption of a per se test. More importantly, we purpose no such result ourselves.

. "The filing of a petition for liquidation of a domestic insurer or of an alien insurer domiciled in this state stays all actions and all proceedings against the insurer in Utah or elsewhere....” Utah Code. Ann. § 31A-27-317(a) (emphasis added).

. The dissent takes the position that the "facts before us are not related to the business of insurance as defined in Fabe,” citing in support Garcia v. Island Program Designer, Inc., 4 F.3d 57, 62 (1st Cir.1993). Garcia, in fact makes the point we adopt. The federal statute in Garcia gave the United States a priority in the state liquidation proceeding. The law under which the liquidation was conducted would have deprived the federal government from participating in the proceeds of liquidation until after all other claims had been satisfied. Id. at 61. Clearly, the Commonwealth statute prescribing the order in which claims were to be liquidated had nothing to do with the regulation of the business of insurance. Indeed, that statute would have applicability in any form of debt liquidation proceeding and it is not in any way peculiar to the business of insurance. In contrast, application of the federal statute here (having nothing to do with regulating the insurance business) would remove a dispute over a potentially significant piece of the liquidation proceeding (having by definition everything to do with regulating the insurance business) from the state court whose jurisdiction is exclusive and submit it for resolution by a non-judicial forum. That process would thoroughly denigrate Utah Code Ann. § 31A-27-101(2), the state law enacted for the protection of policyholders. Garcia is simply inapposite.